Charlotte Marie DOWNEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17932.

Court of Criminal Appeals of Oklahoma.

May 2, 1973.

D. C. Thomas, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Charlotte Marie Downey, Appellant, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–71–2324, for the offense of Manslaughter in the First Degree; her punishment was fixed at four (4) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Patrick Earl Payne testified that on September 28, 1971, he resided at 1306 N. Pennsylvania in Oklahoma City. At approximately 9:15 p.m., he and his brother, Michael Lee Payne, went next door to a bar called "Our Place," where they attempted to purchase beer and were refused service because his brother did not have sufficient identification. They returned to his duplex and remained there for about twenty minutes until his wife came home from work. The three of them went to a nearby store and purchased two quarts of beer and a six pack. They returned to the duplex and sat on the front porch drinking beer. At approximately 10:-30 p.m., they heard some noise in the bar parking lot, where one girl was attempting to get another girl into a car. Michael knew one of the girls and went over to talk to her. He began arguing with the other girl and they started yelling at each other. The defendant came out of the bar, told the girl to shut up and told Michael and Patrick to leave or she would call the police. They returned to the front porch of the duplex and sat down. Sometime thereafter, four girls left the bar and got into a car. As they drove by the duplex, one of the girls made an obscene gesture and yelled an obscenity at them. Michael picked up a rock and threw it at the car. Shortly thereafter, two of the girls came walking back around the corner toward the house. Payne testified that one of them "got up in my brother's face and said about two or three words and she hit him; doubled up her fists, drew back and hit him and knocked him back." (Tr. 31) She swung at him again and he blocked the blow and struck her. The other girl jumped on his back and he threw her over his shoulder. They both fell to the ground. He heard a gunshot, looked up and saw the defendant "standing up in my yard." (Tr. 31) Michael asked her where she got the gun and defendant did not reply. Michael started moving toward her stating, "I am going to take that gun away from you." The defendant stated, "You leave my girls alone," (Tr. 32) and shot him. He started toward the defendant and Michael said "No; leave her alone. She shot me. She really shot me." (Tr. 32) He went around the corner to

the grocery store and called the police and an ambulance. When the police arrived, he accompanied an officer to the bar where he identified the defendant as the one who shot his brother. On October 10, 1971, Michael Payne died at St. Anthony Hospital.

The testimony of Lois Payne, Patrick's wife, did not differ substantially from the testimony of her husband. She testified that Michael was approximately four to six feet away from the defendant when the shot was fired.

Officer John E. Windle, Jr., testified that he received a shooting call at 11:23 p.m. and proceeded to the bar, "Our Place." He went into Patrick Payne's duplex and observed Michael laying on the divan with a small hole just below the rib cage. After talking briefly with Michael Payne, he and Patrick Payne went to the bar, "Our Place." Upon gaining entry, he asked the defendant where the gun was. The defendant obtained the gun, a .25 caliber automatic revolver, from behind the bar and handed it to him.

Dr. Charles Max Gelnar testified that on the evening in question he was in his third year of residency in surgery at St. Anthony Hospital. He observed Michael Payne at approximately 11:30 p.m. in the emergency room suffering from a gunshot wound in the upper portion of his left abdomen. Michael underwent three major operations and subsequently died on October 10, 1971.

Dr. Stanley J. Dombek testified that he was in his fourth year of residency in surgery at St. Anthony Hospital. He testified that he assisted in the treatment of Michael Lee Payne. In his opinion, the cause of death was a gunshot wound.

Dr. Charles Marshall, a consultant pathologist for the State Medical Examiner, testified that he performed an autopsy on the body of Michael Lee Payne. In his opinion, the cause of death was a gunshot wound to the abdomen.

Officer Joe Robertson identified photographs taken of the scene.

Officer Delbert Bliss testified concerning certain physical evidence obtained from Patrick Payne. He identified Defendant's Exhibit G as being a signed statement taken from the defendant.

For the defense, Elaine Rikli testified that on the evening in question she was employed as a barmaid at "Our Place" tavern; that at about 8:00 p.m. Michael and Patrick Payne came in and ordered two draws. She asked to see their identification and upon examining them, told Michael Payne that she could not serve him beer because she could not read his identification and was unable to tell whether or not he was twenty-one years of age. As they left, one of them called her an obscene name. Later that evening, she heard a disturbance in the parking lot and observed a group of people outside the tavern. Shortly before closing, Pat Robinson came into the bar with her head cut and bleeding. Shortly thereafter, she went outside and observed a fist fight involving two girls and the Payne brothers. The defendant made a telephone call and went outside of the tavern looking at the fight. She went back inside the tavern and returned carrying a gun. She stepped up on the retaining wall and yelled for the people to break up the fight, firing a warning shot into the air. Michael Payne started toward the defendant and she yelled for him to stop. She backed up several steps and again told him to stop. He continued toward her and when he was about an arm length away, she fired the gun.

Claudia Hash testified that she was in the tavern on the evening in question when Pat Robinson entered with her head bleeding. Thereafter, she went outside and observed two girls arguing with the Payne brothers. The next thing she knew, the four people were engaged in a fist fight. She grabbed the back of Patrick's collar to get him off of one of the girls. Patrick started toward her and she backed up into a tree. The defendant hollered, "Stop," and fired a shot into the air. Michael Payne jumped up on the retaining wall and started toward the defendant. Defendant

told him to stop and to go back into the house. Michael stated "that he was going to take that 'mother' and said an obscene word, gun away from her." Michael continued toward her with his fist doubled up. The defendant told him to stop again and backed up. Michael continued toward her and she pulled the trigger. She went back into the tavern and waited until the police arrived at the defendant's request.

The defendant testified that on September 28, 1971, she operated the "Our Place" tavern at the corner of northwest 12th and Pennsylvania; that at about 9:15 p. m. the two Payne brothers came into the bar and she stated that "they looked rather young." (Tr. 377). She asked Miss Rikli to check their identification and they subsequently left the bar. At approximately 10:30 p. m. there was an argument in the parking lot involving the two brothers. She went into the parking lot and stepped between Michael Payne and a lady who were screaming at each other. She told them both to stop and to leave. Michael Payne asked her, "Who in the hell was I to tell him to get out of that parking lot." She informed him that she was the owner of the bar and that he was on private property and that if he did not leave, she would call the police. Michael stated, "Go ahead and call the pigs." (Tr. 378) She went back into the bar and at approximately 11:00 p. m. Pat Robinson came in with a gash in her head. She had someone assist Miss Robinson and she called the police. Shortly thereafter, she observed a fight down the street involving five people. She went back into the bar and took a small .25 caliber automatic pistol, which she kept behind the cash register. She went back outside, fired a shot in the air and hollered for them to stop. Michael Payne jumped up over the retaining wall and started coming toward her. She told him to stop and to stay away. She backed up two or three steps and Michael continued after her. He stated that he was going to take "that fuckin' gun and shoot me with it." Michael lunged at her and she shot him. She told Patrick, "I'll take these ladies and we'll go back in the bar and we'll call the ambulance and the police for your brother." (Tr. 387) She returned to the bar and remained until the police arrived.

Defendant asserts several propositions of error, only one of which we deem necessary to discuss in this opinion. Defendant argues that she was denied her sole defense, that of self defense by Instruction Number 5 which advised the jury in part that "one who is not the agressor and *is in a place where she has a right to be*" (emphasis added) has a right to self defense. The converse of the instruction would be that the defendant, if in the wrong place, would not have the right of self defense.

It is readily apparent that the jury was concerned with the instruction in that after several hours of deliberation they submitted the following written question to the Court:

> "Referring to the instructions marked number 5, line 7 and 8. Specifically the phrase 'and is in a place where she has a right to be . . .' we desire direction from the Court whether or not the defendant had a right to be at the spot where she testified the shooting occurred."

The trial court refused to clarify the instruction, although requested to do so by the defendant. We are of the opinion that the defendant was prejudiced by the language of the instruction restricting the right to self defense only if she was "in a place where she has a right to be."

The judgment and sentence is accordingly reversed and remanded.

BLISS, P. J., and BRETT, J., concur.